(Superior Court of Cincinnat.)
General Term, 1899.

THE CITY OF CINCINNATI v. BENJAMIN F. EHRMAN et al., Members of the Board of Elections of the City of Cincinnati.

The act of the general assembly of April 25th, 1898, entitled an act to regulate and control primary elections in cities of the first grade of the first class, and in any county containing such city, and known as the Kemper Primary Law, is repugnant to sec. 2, art. 2, of the constitution, which provides that all laws of a general nature shall have uniform operation throughout the state.

JACKSON, J; Smith, J. and Dempsey, J., concur.

In view of the importance to the voters of Hamilton county of the questions here involved, and of the limited time allowed for the decision thereof, it has seemed to me that the interests of all concerned would be best subserved by my reservation of this case to the general term.

The plaintiff seeks to enjoin the defendants as members of the board of elections of this city from incurring any obligations and making any expenditures with reference to advertisements, or otherwise, for the purpose of holding a primary election in this city in March next, under an act of the legislature passed April 25th, 1898, entitled "an act to regulate and control primary elections in cities of the first grade of the first class and in any county containing such city," and known as the "Kemper Primary Law."

The petition declares that such contemplated expenditures "would be a misapplication of the funds of the corporation, for the reason that the act aforesaid is unconstitutional and void."

To this petition the defendants have interposed a demurrer; and we are brought to consider the validity of the act in question with reference to sec. 26, art. 2, of the constitution, which provides that "all laws of a 'general nature shall have a uniform operation throughout the state. Section 1 of this act (being sec. 2921-30 Bates Rev. Stat.), which declares the general purposes of the act and the territory in which it is to operate is as follows: "Primary or nominating elections, in cities of the first grade of the first class, and in any counties containing such city, for nominating county or township or municipal officers, or judicial officers chosen by the voters of such city or county, or members of the general assembly, or representatives in congress, or members of Central, controlling or executive committees of political parties shall be held according to the provisions of this act, and persons not nominated in accordance therewith shall not be considered candidates of either of the political parties herein specially designated and their names shall not be printed upon the official ballot under such party symbol or name."

Although the election to be held following the primary election in March next is one for city officers only, we have deemed it necessary to consider the constitutionality of the act in its relation to county and township elections, and the relation of the act in that respect to that part of the act providing for primary elections in cities of the first grade of the first class. It must be considered as settled by the supreme court of this state in frequent adjudications that it is competent for the legislature to provide for the classification of cities, and to enact laws relative to the organization of such cities as thus classified; "and legislation applicable to classes of such corporations as they are designated in the statutes has been uniformly sustained." Accordingly laws relating to sewer and street assessments and applicable only to certain classifications of municipalities have been upheld as a proper exercise of the constitutional power. See Cincinnati

v. Connor, 55 Ohio St., 92.

But such authority has not been generally conceded to the legislature with reference to counties.

In Hixson v Benson, (54 Ohio St., 470), it was held that an act to authorize the county commissioners of such counties as had a prescribed population "to provide for the construction, improvement and repair of public highway", (91 Ohio St., 759) "is unconstitutional in this, that its subject matter is general while its operation and effect are local." And this case expressly overrules the second syllabus of State v. Commissioners, (35 Ohio St., 458) which apparently announced a contrary doctrine.

In deciding this case the court did not refer to the numerous cases upholding laws with reference to the organization and classification of cities. And again in State v. Davis, 55 Ohio St., 15, it was held that "an act to authorize the commissioners of Mahoning county to repair, extend, reconstruct and rebuild one or more bridges across the Mahoning river in the city of Youngstown in said county" was repugnant to sec. 26, art. 2, of the constitution. In both of the foregoing cases it was held that laws relative to bridges and highways were on general subject matters, not local or peculiar to any county, and hence such laws could not be limited in their operation to one or more counties.

Counsel for defendants rely upon McGill v. State, 34 Ohio. St., 228 as sustaining a contrary doctrine. It was there held that an act regulating the selection of juries in Cuyahoga county was not a law of a general nature within the meaning of. sec. 26, art. 2, of the constitution. In that case it was recognized that the selection of juries was a general subject matter, but in sustaining the application of the law to Cuyahoga county only the court said, "It was designed to meet a special want in a county having within its limits a large and growing city, constantly increasing in population. That local conditions may exist in such cities or in populous portions of the state, requiring

regulations for the selection of jurors differing from those in other parts of the state less populous, and where such conditions do not exist, is very manifest."

The supreme court speaking of the McGill case in case Cincinnati v. Steinkamp, 54 Ohio St., 293, said: "Yet the mode of selection of juries was left to legislative discretion and judgment, and it was within legislative competency where it 'was apparent that a mode differing from that generally is use is necessary to meet the special wants of a particular county, to enact a law applicable to that county."

So in the case of State v. Sharer, 46 Ohio St., 277, the court in speaking of the McGill case recognized the fact that the jury law applicable to Cuyahoga county, "was designed to meet a special want in a particular county." This fact of "a special want existing in a particular county" which was found by the court that decided the McGill case and also considered as having been determined in later cases following the McGill case, is what distinguishes that case from the case at bar. For it has been clearly pointed out in case of State v. Sharer, 46 Ohio St., supra, that "a law is not necessarily of a general nature by reason simply of its being upon a general subject." If the law be of a general nature, that is, necessarily affecting all parts of the state alike. it must have a uniform operation throughout the state. But if it merely relates to a general subject matter, that is, one that might have been reached by means of a general law, "it is sufficient if it operates upon every person brought within the relation and circumstances provided for, and in every locality where the conditions exist." City v. Steinkamp, 54 Ohio St., 295.

We may also observe in passing that in Hixson v. Burson, 54 Ohio St., 483, the court used the following significant language, with reference to the McGill case; "the attempted limitation of the scope of sec. 26, art. 2, in some of the cases cited is too narrow, notably is this true of the cases of McGill v. State, and Cass v. Dillon, supra."

The question then arises, is the subject of the act in question general or local in its nature; that is, is it a matter needful and proper for regulation in such counties only as have a city of the first grade of the first class? It is contended by defendants that this question is subject only to legislative determination, and that the legislature in thus limiting the act in this case has conclusively determined the question of the necessity of such act for such counties only as have a city of the first grade of the first class. But this cannot be sustained. In Gaylord v. Hubbard, 56 Ohio St., the court said: "This view of the question also denies to the general assembly the power to conclusively determine whether a subject upon which they are about to legislate, is general or local in its nature. If such subject is in its nature, general, its character can not be changed by legislative declaration. If this result could be brought about in that way, all that would be necessary to the validity of a local statute dealing with a general subject, would be a prior declaration that the subject was local. And again, on page 36, the court said: "The only practicable rule on the subject is that which requires each case as it arises to be placed in the one class or the other as the common understanding of mankind may dictate." In other words, the question is one for judicial and not for legislative determination; and must be decided by the courts in each case as it arises. In so doing the courts are authorized to exercise "the common understanding of mankind" upon these subjects.

Bearing this rule in mind we have no difficulty in holding that the subject of regulating primary elections is a general one; nor are we without authority in so holding. See State v. Posten, 40 W. L. B., 386, and also the recent case of State v. Buckley, decided by the circuit court of Cuyahoga county and reported in 41 W. L. B., 87. In the latter case it was said, "the subject of a fair election is one that interests all the people of the

state. The people of one county are no more interested in the proper conduct of elections in their county than are the people of an adjoining county." Again the court said, "a law is not general in any correct sense of the term, but is special, when it is suspended in one locality where exists a proper subject matter on which to operate; but is in full force in another locality of exactly the same kind * * * There are reasons why a city needs election regulations that would be useless in country districts. So far as this classification is made in the laws of Ohio they are constitutional." And again, "aside from the distinction existing as shown before between cities and rural districts, there is no sufficient ground as to locality in which the law shall operate to make any classification of the laws of election. As to the interest that all persons have in such laws, it is the same in every part of the state." And on page 98 of this decision occurs this significant language: "These laws undertake to make and do make a distinction between the rural parts of a county containing a city of the class named in the law, and the rural parts of a county not containing such city. Any reason for this distinction in the law is not easily comprehended. We know none, nor can we think of any reason why one county should be or can be distinguished from another under the election laws. It is clear from the decisions of the supreme court of the state that the classification allowed by the laws of the state as to municipalities cannot be extended to counties." We must therefore say that the subject of elections is a general one; and that no reason appears and none has been suggested for having the law in question apply to Hamilton county and to townships in said county, which do not apply equally to other counties and other townships throughout the state, and hence the law in this respect must fail.

Having ascertained that the law is unconstitutional insofar as it relates to county and township elections, the next inquiry is as to its validity with

reference to municipal elections in cities of the first grade of the first class. It is contended by the plaintiff that the law in this respect cannot be upheld on the authority of cases maintaining the constitutionality of laws relating to the organization of cities, and to sewer and street assessment laws in cities of certain designated classifications.

It is urged that the present act is distinguishable from the above mentioned inasmuch as it but indirectly affects the city as such and directly affects the people in the exercise of their rights and privileges; and hence it is claimed it falls within the rule announced in the Steinkamp case with reference to the construction of fire-escapes.

In the view we take it is unnecessary to determine this or any other objections that might be advanced against the law if it related solely to cities of the first grade of the first class. We think the law in its relation to the municipality, and to the county and townships therein is so interwoven and so inter-dependent that the whole law must fail, even if it be conceded that a part of the law standing alone might otherwise be constitutional. A careful reading of the first section of the act makes it apparent that the law was intended to apply to certain designated elections held within a certain territorial limit. That is, it was intended to be limited to such county as had in it a city of the first grade of the first class, and to county, municipal and township elections occurring therein. It was intended to apply to the elections of such officers as are to be chosen only by the voters within that prescribed territory; and was not intended to apply to any election held therein for an officer to be voted for outside of the territory, as for instance, a judge of the circuit court, or for state officers. We think the law is carefully drawn with this object in view. In other words, it was not intended for the regulation of every election occurring in the city, or for every election occurring in the county or township; so that the law in its application to each

could be considered as a separate and distinct enactment and not dependent upon the other for validty. On the contrary, the enactment must be regarded as but one provision, as a whole, intended for the regulation of elections of all officers elected exclusively within that territorial limit or any designated part thereof. It was intended to apply throughout the entire county, but only to elections to be exclusively determined therein. Hence we could not overturn the law within a part of the designated territory and sustain it as to the rest.

Otherwise it would lead to consequences which we do not think we should assume the legislature intended unless such intention clearly appears. For instance, in the same nominating convention for county officers we would have delegates from the city elected under the provisions of this act and delegates from the outlying country chosen under a different law; and we do not feel at liberty to suppose that the legislature intended other than uniformity in the election of all delegates to the same county convention. Again, in the election of members of the executive committees for the county, those from the city would be elected under this law, and those from the outlying country, while not chosen under or in any wise governed by the provisions of such law, would nevertheless have a voice as such county executive committeemen in election matters in the city where such law was in force. We cannot give such interpretation to the law.

In Moore v. Given, 39 Ohic St., 661, it was said: "It is the duty of courts in the interpretation of statutes, unless restrained by the letter, to adopt that view which will avoid absurd consequences, injustice or great inconvenience, as none of these can be presumed to have been within the legislative intent."

In State v. Buckley, 41 W. L. B., 95, the language of the court is exceedingly appropriate to the question we are now considering. It was there said: "There is no doubt that an act may be constitutional in part and in part void. If the unconstitutional parts are essential to the constitutional, all must fail, and if the parts are so mutually related as to make it evident that the legislature intended them to constitute one, so that if all could not be carried into effect, none would have received the legislative sanction, the case is within the same rule; but this rule must be taken with the limitation that the parts so held respectively, constitutional and unconstitutional, must be wholly independent of each other, so that one intent may exist as to one, and a separate intent as to the other."

Authorities might be multiplied in support of this rule were it necessary. We think it entirely applicable to the case at bar. It follows that the entire law in question must be held to contravene section 26, article 2, of the constitution, and the demurrer to the petition of plaintiff will therefore be overruled.